AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original

CLERK'S OFFICE
A TRUE COPY
May 18, 2021
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>The use of a cell-site simulator to locate the<br>cellular device assigned with Vehicle<br>Identification Number 1C4SDJH98MC643044 | Case No. 21-M-400 (SCD) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ____Eastern____ District of ____Wisconsin____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ____6-1-21____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ____Stephen C. Dries____.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
   ☑ for  30  days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:     5-18-21. 1:25 pm                                    *(Judge's signature)*  Stephen C. Dries

City and state:     Milwaukee, WI                           Stephen C. Dries, U.S. Magistrate Judge
                                                                                   *Printed name and title*

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name(s) of any person(s) seized: |||

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned with Vehicle Identification Number (VIN) 1C4SDJH98MC643044 ("the SUBJECT ACCOUNT"), whose wireless provider is AT&T Corporation, and whose listed subscriber is unknown.

## ATTACHMENT B

Pursuant to an investigation of Shaft A. DARBY for violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); 18 U.S.C. §§ 924(c) & 2(a); and 18 U.S.C. §§ 922(g)(1) & 924(a)(2), this Warrant authorizes the officers to whom it is directed to determine the location of the SUBJECT ACCOUNT identified in Attachment A by collecting and examining:

1. radio signals emitted by the SUBJECT ACCOUNT for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
May 18, 2021
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of  )
*(Briefly describe the property to be searched or identify the person by name and address)*  )
)  Case No. 21-M-400 (SCD)
The use of a cell-site simulator to locate the cellular device assigned with Vehicle Identification Number 1C4SDJH98MC643044  )
)
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☐ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 860(a); 18 U.S.C. §§ 924(c) & 2(a); 18 U.S.C. §§ 922(g)(1) & 924(a)(2) | possession with intent to distribute more than five grams of a controlled substance within 1000 feet of a public school; possession of a firearm in furtherance of a drug trafficking crime; possession of a firearm by a felon |

The application is based on these facts:
See attached affidavit

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of 30 days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Kathrine L. Karlsen*
Applicant's signature

Kathrine Karlsen, FBI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 5-18-21

*Stephen C. Dries*
Judge's signature

City and state: Milwaukee, WI    Stephen C. Dries, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Kathrine Karlsen, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned with Vehicle Identification Number (VIN) 1C4SDJH98MC643044 ("the SUBJECT ACCOUNT"), which is described in Attachment A.

2.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since May of 2019. I have been assigned to the Milwaukee Area Safe Street Task Force since October of 2019. Prior to being employed as a Special Agent with the FBI, I was employed as a Staff Operations Specialist for the FBI for approximately nine years. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

3.     As a Special Agent, I have participated in the investigation of narcotics-related offenses, resulting in the seizure of illegal drugs, weapons, United States currency, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained

information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by the narcotics traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover operations, court-ordered wiretaps, analysis of phone and financial records, and the arrests of numerous drug traffickers. I have also been the affiant of search warrants. Additionally, I have spoken with other experienced narcotics investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

4. In addition to my experience in the investigation of individuals involved in federal criminal offenses, I also have knowledge and experience in the apprehension and prosecution of individuals involved in federal criminal offenses. I am familiar with and have experience in the use of cellular devices used to commit those offenses as well as the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their locations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. One purpose of applying for this warrant is to determine with precision the SUBJECT ACCOUNT's location. However, there is reason to believe the SUBJECT ACCOUNT is currently located somewhere within this district because the SUBJECT ACCOUNT's owner and/or operator is known to spend most of his time in this district and the vehicle to which the SUBJECT ACCOUNT accompanies, is registered to a Milwaukee, Wisconsin address, and was seen at least one times in this district since March 31, 2021. Pursuant to Rule 41(b)(2), law enforcement may locate the SUBJECT ACCOUNT outside the district provided the device is within the district when the warrant is issued.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that Shaft A. DARBY (DARBY) (DOB: xx/xx/1991) has violated 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a) (possession with intent to distribute more than five grams of a controlled substance within 1000 feet of a public school); 18 U.S.C. §§ 924(c) & 2(a) (possession of a firearm in furtherance of a drug trafficking crime); and 18 U.S.C. §§ 922(g)(1) & 924(a)(2) (possession of a firearm by a felon). DARBY was charged with these crimes on March 2, 2021, and he is the subject of an arrest warrant issued on March 3, 2021. There is also reason to believe that DARBY is aware of these charges and is actively avoiding law enforcement apprehension.

3

Case 2:21-mj-00400-SCD   Filed 05/18/21   Page 8 of 20   Document 1

There is also probable cause to believe that the SUBJECT ACCOUNT's location will assist law enforcement in arresting DARBY, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8.  Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. *See* 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

9.  On or about March 2, 2021, DARBY was charged by Indictment with possession with intent to distribute more than five grams of a controlled substance within 1000 feet of a public school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) & 2(a); and possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). The Indictment is currently sealed. *See United States v. Shaft A. Darby and Marquan L. Clemmer*, 21-CR-48.

### Criminal Offense Details

10. On October 12, 2020, at approximately 2:15 p.m., law enforcement officers were conducting surveillance at Al's Wheels and Deals, a business located at 4270 N. 76th Street in Milwaukee, Wisconsin. Law enforcement was acting in an undercover capacity and operating in an undercover government vehicle.

4

Case 2:21-mj-00400-SCD    Filed 05/18/21    Page 9 of 20    Document 1

11. At approximately 2:42 p.m., law enforcement observed a gray in color 2014 Jeep Grand Cherokee SUV bearing Wisconsin registration plate of 470-ZEC (VIN# 1C4RJFDJ9EC395246), hereinafter referred to as the "gray Jeep," enter the parking lot of Al's Wheels and Deals. Law enforcement then observed the gray Jeep parked next to a black in color 2018 Jeep Grand Cherokee SUV bearing Wisconsin registration plate of ABE-3330 (VIN# 1C4SDJH98MC643044), hereinafter referred to as the "black Jeep."

12. On October 12, 2020, at approximately 3:54 p.m., law enforcement observed DARBY, wearing a tan Burberry hat, black hooded sweatshirt and black jeans, exit the gray Jeep. Law enforcement then observed DARBY enter the black Jeep. DARBY was then observed reversing the black Jeep towards the overhead door to the building of 4270 N. 76th Street. Law enforcement then observed DARBY exit the driver door and open the tailgate of the black Jeep. At this time, law enforcement was not able to observe DARBY's actions due to the position of other vehicles obstructing their view. Law enforcement conducting surveillance advised other officers regarding the above-described observations.

13. DARBY was then observed getting back into the driver seat of the black Jeep and parking the vehicle next to the gray Jeep. Affiant then observed a subject, later identified as Marquan L. CLEMMER (DOB: xx/xx/1995), retrieve a purple "Bape" hooded sweatshirt from the rear passenger compartment of the gray Jeep. Affiant then observed CLEMMER open the rear left passenger door of the

5

black Jeep. During this time affiant was not able to observe CLEMMER's actions while he was near the rear passenger door of the black Jeep.

14. Additional law enforcement officers then entered into the parking lot of Al's Wheels and Deals. At this time, the driver door of the gray Jeep was open. As law enforcement exited the squad car and began walking towards the Jeep, CLEMMER exited the front passenger door of the gray Jeep and began running westbound towards N. 76th Street. DARBY exited the driver seat of the gray Jeep and fled westbound around the rear of the gray Jeep and then back northbound near the front entrance from where the officers entered.

15. During flight, CLEMMER ran up onto a vehicle and jumped off the vehicle over a chain link fence surrounding the parking lot of Al's Wheels and Deals. Law enforcement followed CLEMMER and apprehended him on the median across the street of N. 76th Street. Upon CLEMMER's arrest, law enforcement located in his front right pants pocket four cell phones. Law enforcement also located a loaded black Glock 48 9 mm semi-automatic handgun from the bottom of CLEMMER's left side pants leg. CLEMMER also had a Jeep key fob around his neck and was also in possession of $80.00 in U.S. currency.

16. During flight, law enforcement gave DARBY multiple verbal commands to "stop." DARBY disregarded the verbal commands and continued to flee on foot. Law enforcement followed DARBY and observed DARBY throw a pill bottle on the roof of 4302 N. 76th Street. Law enforcement then apprehended DARBY.

6

17. While standing in the parking lot of Al's Wheels and Deals, law enforcement observed the pill bottle that DARBY threw on the top of the roof of 4302 N. 76th Street. Due to strong winds, the pill bottle blew off of the roof, and law enforcement located and secured the pill bottle, which was revealed to contain approximately 57 Oxycodone Hydrochloride 30 mg pills, a Schedule II controlled substance. The pill bottle did not contain a prescription label. Upon arrest, DARBY was found to be in possession of four cell phones, $2,920.10 in U.S. currency, and approximately 2 grams of marijuana.

18. A search of both Jeeps was thereafter conducted. A search of the gray Jeep revealed the following, which list is non-exhaustive:

  a. Open box 150 count sandwich bags in center console;

  b. A large dry freezer bag containing clear plastic bags that contained approximately 497.51 grams of marijuana on the front passenger floorboard;

  c. Drum magazine for firearm under front passenger seat;

  d. Tan FN BG 9mm semi-automatic (Serial # CSU0057167) handgun on the rear passenger floorboard in the middle of the compartment;

  e. WI auto plates, ABR5696, AAF4004, and AHT2100, in the trunk; and

  f. $120.00 in U.S. currency in the passenger door handle.

19. A search of the black Jeep revealed the following, which list is non-exhaustive:

  a. Bottle of suspected promethazine with no label, weighing 70.91 grams with the bottle, in driver door map pocket;

7

    b. A cellular phone in glove box;

    c. Large clear plastic "pound bag" containing marijuana residue on passenger rear floorboard;

    d. Black backpack on passenger side rear seat containing a total of $67,410.00 in U.S. currency, clear plastic bags that contained approximately 134.92 grams of marijuana, a digital scale, and identifiers of "Terrance M. CLEMMER";

    e. Gray duffle bag containing a large clear plastic dry freezer bag containing approximately 449.33 grams of marijuana; and

    f. WI registration plate AJT-1610 in trunk.

20. Video surveillance of Al's Wheels and Deals captured DARBY and CLEMMER on the day of their arrest. Surveillance depicts DARBY exiting the gray Jeep, operating the black Jeep, and meeting with another individual, who switches out the license plates of the black Jeep. DARBY is then observed driving the black Jeep to a location near the gray Jeep, which he then enters. DARBY and CLEMMER are both observed exiting the gray Jeep. Eventually, CLEMMER is depicted retrieving a black backpack from the gray Jeep and placing it in the rear compartment of the black Jeep. This black backpack matches the description of the black backpack that contained a large sum of U.S. currency and marijuana located in the black Jeep.

21. On November 5, 2020, at approximately 12:30 p.m., DARBY and Terrya Bolden, the mother to DARBY's children, paid $550.00 to have the black Jeep released to them from the City of Milwaukee Tow Lot, located at 3811 W. Lincoln Avenue, Milwaukee, Wisconsin.

### The matte-gray Dodge Durango Hellcat and the SUBJECT ACCOUNT

22. On April 28, 2021, United States Magistrate Judge William E. Duffin authorized a pen register/trap and trace and cell site/ping warrant for the cellular device associated with VIN 1C4RJFN97JC310127, the black Jeep.

23. On April 30, 2021, case agents received historical location data for the black Jeep. The data showed that the Jeep was in the area of 45th Street and US-41 in Highland, Indiana, from April 5, 2021, to April 28, 2021. Case agents researched the area and found several car dealerships in the proximity of the historical location data. Additionally, case agents found the black Jeep to be listed for sale out of Highland, Indiana, at truecar.com. The advertisement listed the black Jeep to be sold from Thomas Dodge Chrysler Jeep Ram of Highland, Indiana, a car dealership within close proximity of the location data of the black Jeep.

24. On May 4, 2021, case agents spoke to the business manager at Thomas Dodge Chrysler Jeep of Highland Inc. located at 9604 Indianapolis Boulevard, Highland, Indiana, who informed case agents that DARBY and Terrya Bolden traded in the 2018 Jeep Grand Cherokee Trackhawk for a matte-gray 2021 **Dodge Durango Hellcat** with **VIN 1C4SDJH98MC643044** on March 30, 2021.

25. On March 31, 2021, at approximately 10:34 a.m., case agents observed DARBY exit the rear of the residence located at 8324 W. Center Street, Milwaukee. DARBY used the keypad to open one of the two garage doors behind the target residence. Case agents observed DARBY drive a matte-gray **Dodge Durango Hellcat** from the garage, out the alley and turn north on 84th Street.

9

26. The **Dodge Durango Hellcat** is currently registered to DARBY and Terrya L. BOLDEN at address 8324 W. Center Street in Milwaukee, Wisconsin.

27. Based upon information regarding DARBY's vehicle trade-in, the registration information for the **Dodge Durango Hellcat**, and case agents' observations of DARBY operating the **Dodge Durango Hellcat**, case agents believe DARBY is currently operating the **gray Dodge Durango Hellcat**.

28. Furthermore, DARBY has been traffic stopped and has fled from law enforcement in various instances in 2019 and 2020. Specifically, DARBY fled from law enforcement on or about April 23, 2019, in the area of 6800 W. Hampton Avenue, and on or about March 18, 2020, in the area of 8400 W. Hampton Avenue. Additionally, DARBY was traffic stopped on or about August 15, 2019, in the area of N. 72nd Street and W. Ruby Avenue, and on or about October 3, 2019, in the area of N. 75th Street and W. Courtland Avenue.[1]

29. Case agents also believe that DARBY knows and/or believes that law enforcement is searching for him because of his criminal activities.

30. Based upon DARBY's pattern of fleeing from law enforcement, including on the day of his arrest in October 2020, case agents believe that it is likely for DARBY to act in accordance when he encounters law enforcement. Therefore, agents believe that the requested warrant will allow them to not only

---

[1] DARBY has an active Felony Milwaukee Police Department suspect alert for fleeing/Eluding (Citation # BF906634-1).

10

determine DARBY's location to arrest him, but to also reduce the risk of danger posed to the apprehending officers.

31. Furthermore, your affiant knows through communications with other law enforcement members that newer vehicles, such as a 2021 Dodge Durango, are frequently equipped with cellular modems inside their vehicles. These cellular modems are assigned a unique cellular identifier and generate historical and prospective records similar to a traditional cellular phone. The unique cellular identifier is associated with a specific VIN. These records can assist law enforcement in identifying the location of the vehicle including patterns of travel and areas where the subject may reside or frequent.

32. Most Original Equipment Manufacturers (OEMs) have partnered with AT&T or Verizon to provide cellular connectivity within their vehicles.

33. A check of open source information from AT&T identifies the **2021 Dodge Durango Hellcat** as a vehicle that has a built in WiFi hotspot that is serviced by AT&T, identified as the SUBJECT ACCOUNT.

## MANNER OF EXECUTION

34. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

11

35. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the SUBJECT ACCOUNT or receiving signals from nearby cellular devices, including the SUBJECT ACCOUNT. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the SUBJECT ACCOUNT and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the SUBJECT ACCOUNT and use that information to determine the SUBJECT ACCOUNT's location, even if it is located inside a house, apartment, or other building.

36. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the SUBJECT ACCOUNT, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the SUBJECT ACCOUNT, and law enforcement will limit collection of information from devices other than the SUBJECT ACCOUNT. To the extent that any information from a cellular device other than the SUBJECT ACCOUNT is collected by the law enforcement device, law enforcement will delete that information, and

12

law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the SUBJECT ACCOUNT from all other cellular devices.

## AUTHORIZATION REQUEST

37. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.

38. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the SUBJECT ACCOUNT would give that person an opportunity to destroy evidence, change patterns of behavior, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

39. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the SUBJECT ACCOUNT outside of daytime hours.

40. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

13

# ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned with Vehicle Identification Number (VIN) 1C4SDJH98MC643044 ("the SUBJECT ACCOUNT"), whose wireless provider is AT&T Corporation, and whose listed subscriber is unknown.

## ATTACHMENT B

Pursuant to an investigation of Shaft A. DARBY for violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860(a); 18 U.S.C. §§ 924(c) & 2(a); and 18 U.S.C. §§ 922(g)(1) & 924(a)(2), this Warrant authorizes the officers to whom it is directed to determine the location of the SUBJECT ACCOUNT identified in Attachment A by collecting and examining:

1. radio signals emitted by the SUBJECT ACCOUNT for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).